THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HENRY E. SPEIRS, Defendant-Appellant.

Fourth District   No. 4—91—0790

Opinion filed July 9, 1992.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Peter C. Drummond, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Henry E. Speirs appeals from his conviction after a jury trial in Adams County for aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(8)). He argues reversible error occurred

when he was ordered to remove his jacket to reveal tattoos on his arms. He also contends the trial court's order requiring him to pay restitution must be vacated because he was not mandated to pay it within the statutory period of five years. No error occurred when the defendant was required to reveal the tattoos on his arms. However, we remand the case to the trial court to enter an appropriate restitution order.

An incident which occurred outside a tavern called "the Forum" in Quincy, Illinois, the evening of February 23, 1991, gave rise to the aggravated battery charge. The victim of Speirs' alleged aggravated battery was Steven Ebersohl. Ebersohl testified he drank two beers at a party before arriving at the Forum at approximately 11 p.m. He met Carrie Clancy there. His girlfriend, Kelly Hook, previously agreed to pick him up from the tavern at approximately 2 a.m. He consumed five more beers while at the tavern.

At approximately 2 a.m. Ebersohl exited the tavern's back door and met Hook outside in the alley. He had seen an ex-boyfriend of Hook's and he and Hook argued about him. According to Ebersohl, they were not raising their voices and there was no physical violence involved. During their argument, Ebersohl heard someone, whom he later identified as defendant, telling him to leave Hook alone. Ebersohl saw Speirs 10 or 15 feet away. Speirs asked Ebersohl whether he wanted to fight. Ebersohl responded he wanted no trouble and he turned back toward Hook. When Ebersohl turned slightly, Speirs hit him in the face. He could not recall anything that occurred after he was struck other than later talking to the police. He sustained seven stitches above his left eye. Ebersohl did not know Speirs before this incident.

A week after the incident, Ebersohl was in the Forum again with Clancy and Hook. He did not recall drinking that evening. He recognized Speirs from approximately 20 feet away as the one who struck him during the earlier incident. He told Clancy and directed her to the area where Speirs was standing. A few days later Ebersohl identified Speirs in a photo array.

Ebersohl also testified that on the night of the incident, he saw a tattoo on Speirs' right arm. He described the tattoo as going in an upward angle in two separate directions. Over defense counsel's objection, the trial judge ordered Speirs to remove his jacket and display his arms to the jury. Speirs' right arm contained a tattoo of a girl and a small design similar to a skull. His left arm had a larger tattoo which the prosecutor described as the "grim reaper." Upon the trial

judge's inquiry, defense counsel responded he had no objection to this characterization.

Ebersohl described the lighting outside the tavern as good because of a streetlight. The light was off the alley about 5 to 10 feet. Ebersohl also identified the person depicted in the State's exhibit No. 1 as a photograph of a man who was with Speirs the night of the incident.

Clancy consumed approximately three beers before arriving at the Forum. She met Ebersohl there and consumed two more beers and a "kamikaze." She saw Ebersohl exit the back entrance. She followed a short time later and saw Ebersohl and Hook talking. She stood near the alley about 14 feet away from them. She identified Speirs as a person she saw interrupt Ebersohl's conversation with Hook and ask him if he wanted to fight. Ebersohl responded no, and Speirs punched him in the nose. According to Clancy, Hook began kicking Speirs. Ebersohl was down on the ground. He got up, however, and Speirs hit him in the face a second time. She could not recall what Speirs was wearing the night of the incident.

Clancy also testified that approximately a week later she saw Speirs in the Forum while she was there with Ebersohl. Ebersohl told her he saw Speirs and directed her attention to several men who were along the bar. She recognized Speirs. She stated she consumed approximately six beers before she saw Speirs. On cross-examination, she denied Ebersohl suggested Speirs was the man who struck him approximately a week prior. She later identified Speirs in a photo array.

Hook testified that on the night the incident occurred, she arrived at the Forum at approximately 2 a.m. She had previously consumed two beers. While she and Ebersohl were talking, she heard a person behind them tell Ebersohl to leave her alone. She stated Speirs was approximately 10 feet away from them. Ebersohl responded he did not want to fight and Hook turned around with her back toward Speirs. She heard Speirs repeatedly asking Ebersohl if he wanted to fight. She turned toward Speirs as he reached over and hit Ebersohl in the face. She kicked Speirs and he hit Ebersohl again in the face. She, too, identified the State's exhibit No. 1 as a photograph of the man who accompanied Speirs the night the incident occurred.

Quincy police officer Kathy Martin testified she interviewed Ebersohl the night of the incident. Although Ebersohl was bleeding, he was alert and able to talk with her. She also opined the lighting in the alley behind the Forum is good.

Speirs testified that on the night of the incident he was at the Forum with his ex-wife, Deanna Speirs, and friends Jason Colvin and Kim Gooding. He arrived at approximately 1 a.m. and left around 3 a.m. While there, he consumed beer from a pitcher. He denied any altercation with Ebersohl and stated he left without incident.

He recalled talking to a police officer about a week later while at the Forum. On cross-examination, Spiers stated he had two to four beers before arriving at the Forum the night of the incident. Speirs introduced evidence that he was previously convicted of burglary in 1981 and 1982 and of robbery in 1985.

Colvin testified he accompanied defendant, Deanna Speirs and Kim Gooding to the Forum the night of the incident. He stated they had consumed several drinks and left the tavern at approximately 3 a.m. without incident. Nothing unusual occurred that night. On cross-examination, Colvin recalled defendant had consumed several beers at the Forum. Colvin was not drinking alcohol. He identified the State's exhibit No. 1 as a picture of himself.

Deanna Speirs testified she and defendant were reunited. They were again living together with their children. She remembered the weekend of the occurrence because that was when defendant and she began seeing each other again. She also recalled the weekend when the police came into the Forum to talk with defendant. She stated defendant was not involved in an altercation with Ebersohl and she did not recognize any of the people who were accusing defendant of the altercation.

The jury returned a verdict of guilty of aggravated battery against defendant. (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(8).) After a sentencing hearing, the trial judge imposed a five-year prison term with 43 days' credit for time served. He also ordered defendant to pay $735.25 in restitution to Ebersohl and $190 to Ebersohl's insurance company. The restitution was to be paid from Speirs' bond and within one year of his release from the Department of Corrections.

Speirs initially argues reversible error occurred when he was ordered to remove his jacket and expose his arms to the jury after the State introduced Ebersohl's testimony to the effect that he thought he observed a tattoo on Speirs' right arm the night of the incident. He contends this exposure demeaned and ridiculed him in the presence of the jury and this information should have been obtained through discovery procedures. (See 134 Ill. 2d R. 413.) He also argues this evidence was improperly admitted because it was irrelevant and inflammatory.

Although he concedes he did not file a post-trial objection raising this issue, he contends it is plain error. The plain error rule applies in criminal actions when the defendant did not properly preserve an issue for appeal but the evidence was closely balanced or the error adversely affected the defendant's right to a fair trial. *People v. Mullen* (1990), 141 Ill. 2d 394, 401-02, 566 N.E.2d 222, 226; *People v. Carlson* (1980), 79 Ill. 2d 564, 576-77, 404 N.E.2d 233, 238.

The State initially argues the presence of tattoos on Speirs' arms was relevant to Ebersohl's identification of Speirs as the person who struck him. As the State notes, Ebersohl would only know Speirs had a tattoo from observing it the night of the incident. The State also argues Speirs improperly asserts tattoos are demeaning and somehow inflammatory.

■ It was not error to require Speirs to expose his arms to the jury. Evidentiary rulings are within the trial court's discretion and should not be overruled absent an abuse of discretion. (*People v. Franklin* (1990), 135 Ill. 2d 78, 96, 552 N.E.2d 743, 751; *People v. Boclair* (1989), 129 Ill. 2d 458, 476, 544 N.E.2d 715, 723.) Speirs' tattoos were relevant evidence. Relevant evidence is evidence which makes the existence of any fact that is important to the outcome of the case more probable than it would be without the admission of the evidence. *Boclair*, 129 Ill. 2d at 477, 544 N.E.2d at 723; *People v. Monroe* (1977), 66 Ill. 2d 317, 322, 362 N.E.2d 295, 297.

Speirs argues the evidence of his tattoos was submitted merely to suggest he was of bad character or questionable integrity. The cases he cites as support are distinct because evidence of previous crimes or immoral behavior was at issue. *People v. Lewis* (1962), 25 Ill. 2d 442, 445, 185 N.E.2d 254, 256; *People v. Paull* (1988), 176 Ill. App. 3d 960, 964, 531 N.E.2d 1008, 1010.

The Illinois Supreme Court has concluded no error occurs when a defendant is required to model clothing allegedly worn by an assailant. It reasoned this was relevant because the fit of clothing was at issue. (*People v. Warmack* (1980), 83 Ill. 2d 112, 127, 413 N.E.2d 1254, 1261.) Compelling a defendant to model eye glasses in evidence has also been approved. *People v. Tomaszek* (1964), 54 Ill. App. 2d 254, 263, 204 N.E.2d 30, 34.

Whether Speirs had a tattoo on his right arm was relevant. A demonstration that Speirs had a tattoo similar to the type described by Ebersohl was of probative value to the jury. All probative evidence is likely to be prejudicial to a defendant. It was not unfair to require the demonstration.

■ Speirs also argues the prosecutor's remarks in his closing argument were inflammatory and prejudicial. The prosecutor indicated Speirs had tattoos on both arms. He also stated "[w]ell, of course, the defendant is here in long sleeves and so you can't—[Ebersohl] couldn't see exactly what [the tattoo] looked like, but when the defendant was required to now expose those arms." He also indicated that aside from the tattoos on Speirs' right arm, the arm which Ebersohl testified he saw a tattoo, Speirs also had a grim reaper on his left arm.

Speirs' argument that the prosecutor's statement about him wearing a long-sleeve shirt was prejudicial misconstrues the prosecutor's discussion. It could have been offered to explain why Ebersohl would not have known earlier whether Speirs had a tattoo on his right forearm. The statement indicating Speirs also had a grim reaper tattoo on his left arm was not necessary, but does not require reversal. We also note defendant did not object to this characterization during the closing arguments or in a post-trial motion. We affirm the introduction of the evidence related to Speirs' tattoos.

■ Speirs also argues the trial judge erred by not ordering him to make restitution within five years. The State agrees error occurred. It contends we should not vacate the order, but rather remand it for modification. The trial judge erred by not complying with section 5—5—6(f) of the Unified Code of Corrections (Code), which requires the sentencing judge to "fix a period of time not in excess of 5 years within which payment of restitution is to be paid in full." Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(f).

His order that restitution be paid within one year after Speirs' release from his five-year prison term might extend beyond the mandated five-year period in which restitution must be paid. Although this was error, it does not require the trial judge's order be vacated.

We addressed a similar question in *People v. Stinson* (1990), 200 Ill. App. 3d 223, 558 N.E.2d 642. Although the error regarding restitution in *Stinson* was that the court reserved deciding whether restitution would be ordered, the remedy for that error is also appropriate here. See *Stinson*, 200 Ill. App. 3d at 224-25, 558 N.E.2d at 643-44.

Speirs cites *People v. White* (1986), 146 Ill. App. 3d 998, 497 N.E.2d 888, in which we vacated a restitution order and did not remand it for modification. *White*, however, presented a special situation because we previously remanded the restitution order to the trial court for it to specify the amount of restitution and the time period during which restitution had to be paid. (*White*, 146 Ill. App. 3d at 1004, 497 N.E.2d at 892.) We further discussed this ruling in *Stinson* in which we concluded the better practice is to vacate an improper

restitution order and remand for entry of a proper order. Our reversal in *White* without remanding the order to the trial court occurred because the court did not follow our directions the first time the case was remanded. *Stinson*, 200 Ill. App. 3d at 225, 558 N.E.2d at 643-44.

We vacate the trial court's restitution order and remand the case for the court to comply with the provisions of section 5—5—6(f) of the Code. Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(f).

Affirmed in part; vacated in part and remanded.

STEIGMANN and McCULLOUGH, JJ., concur.