474 S.E.2d 481

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**William Harrison MEADE, Defendant Below, Appellant.**

**No. 23109.**

Supreme Court of Appeals of West Virginia.

Submitted April 24, 1996.

Decided May 17, 1996.

---

James E. Spurlock, Huntington, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Katherine A. Rafter, Assistant Attorney General, Charleston, for Appellee.

McHUGH, Chief Justice:

This case is before this Court upon the final order of the Circuit Court of Cabell County, West Virginia, entered on November 9, 1994. Pursuant to that order, the motion of the appellant, William Harrison Meade, for a new trial and for judgment notwithstanding the verdict was denied, following a jury trial at which the appellant was found guilty of the felony offense of attempted murder of the first degree. *W.Va.Code*, 61–2–1 [1991]; *W.Va.Code*, 61–11–8 [1966]. Upon the entry of judgment upon the jury's verdict, the appellant was sentenced to confinement in the penitentiary for not less than one nor more than five years.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. The appellant contends that the circuit court committed error in directing him to display his tattoos to the jury at trial. In addition, the appellant contends that the circuit court committed error in allowing evidence of the appellant's flight from the trial; and the State's instruction thereon, to be considered by the jury. For the reasons stated below, however, we find those contentions to be without merit, and we affirm the final order.

I

The appellant was indicted by a Cabell County grand jury upon two counts of attempted murder of the first degree. Count one charges that the appellant attempted to murder Kenneth L. Slaughter by trying to run him over with a car. Count two charges that the appellant attempted to murder Greg E. Stevens in the same manner. The appellant's trial was conducted on September 8 and 9 and September 11, 1994. The jury returned a verdict of guilty with regard to count one of the indictment and a verdict of not guilty with regard to count two.

At trial, the evidence of the State consisted largely of the testimony of Kenneth L. Slaughter. According to Mr. Slaughter, he and Greg E. Stevens, both black men, were walking home in the early morning hours of Saturday, June 12, 1993, in the City of Huntington, West Virginia, when they were accosted by three white males in a car shouting racial epithets. Mr. Slaughter and Mr. Stevens kept walking, but, when they reached the parking lot of Papa John's Pizza restaurant on Ninth Street, the car sped onto the lot and the occupants got out. One of the occupants was a white male with extensive tattoos and with a pair of brass knuckles on one hand. At trial, Mr. Slaughter identified the latter individual as the appellant, when the circuit court directed the appellant to remove his shirt and display his tattoos to Mr. Slaughter and to the jury.[1]

As Mr. Slaughter indicated, upon exiting the car, the appellant approached Mr. Slaughter in a belligerent manner, shouted

---

1. At trial, Kenneth L. Slaughter testified as follows with regard to the identification of the appellant:

Q. Would you recognize that person if you saw him again?
A. I think so. I'm not sure.
Q. Would you look around the courtroom and tell me if you see that person in the courtroom?
A. I believe it's the gentleman sitting right there.
Q. Are you sure that's him?
A. No—maybe if he stood up I could maybe tell by his height.
Q. Would you recognize the tattoos if you saw them?
A. Probably so.
Mr. Chiles: Your Honor, I would ask that the [appellant] stand up and display any tattoos that he has.

Mr. Spurlock: Objection, Your Honor.
The Court: Objection's overruled. The [appellant] shall stand and remove his shirt, such as to display any tattoos he has on his upper torso.
Whereupon the [appellant] complied with the request.
The witness: That's him.
The Court: Stand over here and face the jury. Front and back.
Whereupon the [appellant] complied with the request.
The Court: Thank you very much. You may step through the door there and replace your shirt if you wish.
By Mr. Chiles:
Q. Mr. Slaughter, now do you recognize him?
A. Yes, sir, that's the person.

more racial epithets and sought to engage Mr. Slaughter in a fist fight. Mr. Slaughter, however, noticed that the employees of Papa John's Pizza were closing the restaurant for the evening and entreated them to call the police. Upon realizing that the police were being called, the appellant and the other two white males returned to their car, with the appellant in the driver's seat, when, at that point, their rear windshield was broken by a rock thrown by an unidentified third black male. Immediately thereafter, the appellant drove the car across the lot at an accelerating rate of speed, attempting to hit Mr. Slaughter and Mr. Stevens.

The appellant spun the car around and again attempted to hit Mr. Slaughter and Mr. Stevens. The second attempt was a near miss with regard to Mr. Slaughter who was forced to jump upon a wall near the restaurant to avoid being struck. Upon entering the parking lot, the police observed the car attempting to hit Mr. Slaughter. The car was immediately halted, and the appellant was placed under arrest. At trial, Mr. Slaughter, Mr. Stevens and Sergeant Steven Hall of the Huntington Police Department each testified that the appellant had been driving the car.[2]

On the other hand, the appellant's evidence at trial indicated that earlier in the evening the appellant and his two passengers purchased some motor oil and drove to the parking lot at Papa John's Pizza to put the oil in the car engine. At that point, an argument ensued with some black males, whereupon one black male threw the rock breaking the rear windshield of the car as the appellant and his two passengers were driving away. According to the appellant, he then drove the car back onto the parking lot to confront the assailant, at about the same time the police arrived. The appellant testi-

fied at trial that he did not intend to strike or run over anyone with the car. The appellant indicated that he drove the car and had the brass knuckles on the night in question.

It should be noted that the testimony of Kenneth L. Slaughter, Greg E. Stevens and Sergeant Steven Hall was adduced on September 8, 1994, the first day of trial, during the State's case-in-chief. The appellant did not appear for the second day of trial, September 9, 1994, and the circuit court revoked the appellant's bond and issued a capias for his arrest. Although law enforcement authorities were subsequently unable to locate the appellant, he voluntarily returned to the circuit court on September 12, 1994, and the trial resumed. On that date, the circuit court conducted an *in camera* hearing to review a motion by the State to admit evidence of the appellant's flight for consideration by the jury. At the conclusion of the *in camera* hearing, the circuit court granted the motion to admit the evidence, over the objection of the appellant. In so ruling, the circuit court concluded that, under this Court's reasoning in *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981), the probative value of such evidence outweighed its possible prejudicial effect.

Accordingly, during the trial, the State called a deputy circuit clerk for Cabell County who testified that the appellant had not appeared at trial on September 9, 1994, and that a warrant for the appellant's arrest had been issued. During the subsequent testimony of the appellant, however, the appellant explained to the jury that he had left the trial because of fear and embarrassment over being directed to display his tattoos during the first day of trial. During his testimony, the appellant emphasized his voluntary return to court.[3]

....

Q. From your angle, is there any doubt in your mind that Mr. Slaughter would have been hit by that vehicle [had] he not dove out of the way?

A. No, he would have been hit had he not got out of the way.

---

2. During the trial, Sergeant Hall testified as follows:

A.... As I recall, it was Mr. Slaughter that was in imminent danger of being struck by the accused's vehicle and he jumped or dove out of the way of the car.

During this period I was activating my emergency red light to attempt to get the vehicle to stop. Mr. Slaughter had, like I said, got out of the way of the vehicle and the vehicle came on toward my cruiser and eventually did stop.

3. The appellant testified as follows:

At the conclusion of the trial, the circuit court gave various instructions to the jury, including instructions concerning attempted murder of the first degree. Also given to the jury was State's Instruction No. 15, which stated: "The Court instructs the jury that the evidence of flight by the Defendant is competent along with other facts and circumstances, on the Defendant's guilt, but the jury should consider any evidence of flight or concealment with caution since such evidence has only a slight tendency to prove guilt." The appellant objected to the giving of that instruction.

As stated above, the jury returned a verdict of guilty of attempted murder of the first degree with regard to count one of the indictment concerning Mr. Slaughter. The jury returned a verdict of not guilty with regard to Mr. Stevens. The appellant's motion for a new trial and for judgment notwithstanding the verdict was denied by the circuit court, and this appeal followed.

## II

In syllabus point 2 of *State v. Burd,* 187 W.Va. 415, 419 S.E.2d 676 (1991), this Court observed that "[w]here formation of criminal intent is accompanied by preparation to commit the crime of murder and a direct overt and substantial act toward its perpetration, it constitutes the offense of attempted murder." The jury having found the appellant guilty of the attempted murder of the first degree of Kenneth L. Slaughter, the circuit court sentenced the appellant pursuant to the following provision of *W.Va.Code,* 61–11–8 [1966]: "If the offense attempted be punishable with life imprisonment, the person making such attempt shall be guilty of a felony, and, upon conviction, shall be confined in the peniten-tiary not less than one nor more than five years."

▇▇▇ The appellant contends, however, that the circuit court committed error in directing him to display his tattoos to the jury at trial. That issue raises the question of whether the circuit court abused its discretion under the *West Virginia Rules of Evidence,* and, particularly, under Rules 401 and 402 thereof, which allow the admissibility of relevant evidence,[4] and under Rule 403, which concerns the exclusion of relevant evidence on grounds of prejudice. As Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." *See* syl. pt. 7, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994), stating that the *West Virginia Rules of Evidence* are "paramount" in determining the admissibility of evidence in this State; 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 4–1, *et seq.,* (3rd ed. 1994), discussing, generally, Rules 401, 402 and 403.

▇▇▇ In syllabus point 9 of *Derr, supra,* we held:

Although Rules 401 and 402 of the West Virginia Rules of Evidence strongly encourage the admission of as much evidence as possible, Rule 403 of the West Virginia Rules of Evidence restricts this liberal policy by requiring a balancing of interests to determine whether logically relevant is legally relevant evidence. Specifically, Rule 403 provides that although relevant, evidence may nevertheless be excluded when the danger of unfair prejudice, confusion,

---

Q. Mr. Meade, you weren't here last week on Friday. Can you explain to the jury why it is you didn't come here?

A. I was scared and upset and nervous and embarrassed, because I had to take my shirt off in front of all of them, and I didn't know what to do.

Q. Did you come back this morning of your own free will?

A. Yes, sir.

4. Rule 401 of the *West Virginia Rules of Evidence* provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Moreover, as Rule 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible."

or undue delay is disproportionate to the value of the evidence.

*State v. Guthrie,* 194 W.Va. 657, 682, 461 S.E.2d 163, 188 (1995). Similarly, as we held in syllabus point 4 of *Gable v. Kroger Company,* 186 W.Va. 62, 410 S.E.2d 701 (1991): "Rules 402 and 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

Rules 402 and 403 were cited by this Court in *State v. Bass,* 189 W.Va. 416, 432 S.E.2d 86 (1993), wherein the defendant was found guilty by a jury of unlawful wounding. The defendant, in *Bass,* was accused of wounding the victim with a knife during an altercation at a gasoline station. During the trial, the circuit court permitted the jury to view the victim's scar from the wound. Upon appeal, this Court discussed Rules 402 and 403 and held, in *Bass,* that the action of the circuit court did not constitute an abuse of discretion. *See also State v. Scotchel,* 168 W.Va. 545, 554–55, 285 S.E.2d 384, 390 (1981), holding no error occurred where the victim of an assault was permitted to show his scar to the jury; syl. pt. 1, *Carrico v. West Virginia Cent. & P. R'y Co.,* 39 W.Va. 86, 19 S.E. 571 (1894), holding no error occurred where the plaintiff unclothed and exhibited to the jury the shoulder from which his arm had been amputated.

We cite those cases for the proposition that such displays of physical characteristics may constitute proper, relevant evidence for jury consideration, if the probative value of such evidence is not outweighed by the danger of unfair prejudice, etc., under Rule 403. However, this case is otherwise dissimilar because (1) the physical characteristics involved herein are those of the accused in a criminal case, rather than those of the victim, and (2) those characteristics pertain to the identification of the accused at trial as the perpetrator of the crime.

Although the parties have cited no cases in this State involving the display of tattoos to the jury by the accused in a criminal case, the existence of tattoos were factors to be considered upon the issue of identification in

*State v. Tharp,* 184 W.Va. 292, 400 S.E.2d 300 (1990), and *State ex rel. Gonzales v. Wilt,* 163 W.Va. 270, 256 S.E.2d 15 (1979). Nevertheless, cases from other jurisdictions clearly indicate that it is within the discretion of the trial court to require a defendant to display tattoos to the jury in a criminal case, upon the issue of identification. In *Love v. State,* 730 S.W.2d 385 (Tex.Ct.App.1987), the defendant in an aggravated sexual abuse case was required to remove his shirt "so the jury could view his unique body markings." The context of the display concerned the identification of the defendant as the assailant, and the Court, in *Love,* held that the display was proper. *See also State v. Murinko,* 108 Idaho 872, 702 P.2d 910 (1985), no error in display of tattoos, where tattoos confirmed and amplified identification; *People v. Speirs,* 231 Ill.App.3d 807, 173 Ill.Dec. 378, 596 N.E.2d 1257 (1992), trial court properly required defendant to remove his jacket to reveal his tattoos, where identification was at issue; *State v. Hubbard,* 659 S.W.2d 551 (Mo.Ct.App.1983), revealing of tattoos to identification witness was within the trial court's discretion; *Thomas v. State,* 811 P.2d 1337 (Okla.Crim.App.1991), *cert. denied,* 502 U.S. 1041, 112 S.Ct. 895, 116 L.Ed.2d 798 (1992), probative value of evidence of tattoo upon identification issue was not outweighed by its prejudicial effect; *State v. Bowden,* 113 R.I. 649, 324 A.2d 631 (1974), *cert. denied,* 419 U.S. 1109, 95 S.Ct. 782, 42 L.Ed.2d 805 (1975), revealing of tattoo on defendant's forehead was within the trial court's discretion; *State v. Knoche,* 515 N.W.2d 834 (S.D. 1994), requiring defendant to show tattoo to identification witness did not violate privilege against self-incrimination; *Silvestre v. State,* 893 S.W.2d 273 (Tex.Ct.App.1995), trial court did not abuse its discretion by requiring defendant to display tattoos on his arms to the jury; Timothy E. Travers, Annotation, *Propriety of Requiring Criminal Defendant to Exhibit Self, or Perform Physical Act, or Participate in Demonstration, During Trial and in Presence of Jury,* 3 A.L.R.4th 374 (1981).

■ In this case, although the record indicates that the appellant had extensive tattoos, the record contains no description of

them. Certainly, there is no evidence that the appellant's tattoos consisted of any communication of a racial nature. Rather, the record demonstrates that the appellant's tattoos were sufficiently numerous, whatever their nature, to assist Mr. Slaughter in his identification at trial of the appellant as the assailant on June 12, 1993. As the testimony suggests, Mr. Slaughter's initial identification of the appellant at trial was tentative. He became more certain, however, when the circuit court directed the appellant to display the tattoos. *See* n. 1, *supra.* The evidence concerning the tattoos, therefore, was not cumulative, and its probative value outweighed any possible prejudicial effect, especially inasmuch as the display before the jury was apparently momentary. Accordingly, under those circumstances, the circuit court did not abuse its discretion in directing the appellant to display his tattoos. *Gentry v. Mangum,* 195 W.Va. 512, 518, 466 S.E.2d 171, 177 (1995); syl. pt. 6, *Bass, supra.* In particular, we hold that, ordinarily, it is not an abuse of discretion for a trial court in a criminal case to direct the accused to reveal or display the accused's tattoos to a witness and to the jury at trial, where the accused's tattoos are relevant to the question of the identification of the perpetrator of the offense and where the trial court has weighed the probative value of such evidence against the danger of unfair prejudice, *etc.,* pursuant to Rules 401, 402 and 403 of the *West Virginia Rules of Evidence.*

■ The remaining contention of the appellant is that the circuit court committed error in allowing evidence of the appellant's flight from the trial, and the State's instruction thereon, to be considered by the jury. Those matters were submitted to the jury over the appellant's objection. Specifically, as confirmed during the oral argument before this Court, the appellant's objection to State's Instruction No. 15 did not concern the specific language thereof but, instead, concerned the giving of any instruction referring to evidence of flight. The text of State's instruction No. 15 is set forth above. *See* syl. pt. 4, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), and syl. pt. 15, *State v. Bradshaw,* 193 W.Va. 519, 457 S.E.2d 456 (1995), both of which indicate that deference

is given to the circuit court's discretion concerning the "specific wording" of an instruction.

Pursuant to Rule 43(b) of the *West Virginia Rules of Criminal Procedure,* a defendant in a criminal case shall be considered to have waived the right to be present at trial whenever the defendant "[i]s voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial) [.]" *See also* W.Va.Code, 62-3-2 [1931], stating that a defendant "indicted for felony shall be personally present during the trial therefor[,]" and 2 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure,* II-25 (2nd ed. 1993).

Here, the appellant did not appear for the second day of trial, September 9, 1994. Upon his voluntary return, on September 12, 1994, the circuit court conducted an *in camera* hearing to review a motion by the State to admit evidence of the appellant's flight for consideration by the jury. At the conclusion of that hearing, the circuit court granted the motion to admit the evidence, over the objection of the appellant. As indicated above, the circuit court conducted the *in camera* hearing and made its ruling pursuant to this Court's decision in *State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72 (1981).

The *Payne* case involved a jury trial for rape, wherein the circuit court admitted evidence, over the defendant's objection, that the defendant had previously failed to appear for trial and that the defendant's non-appearance had resulted in a bond forfeiture, the issuance of a capias and the institution of extradition proceedings. The circuit court in *Payne,* however, did not conduct an *in camera* hearing to determine the relative value of that evidence prior to its admission. The defendant was convicted upon the charge and appealed to this Court.

■ In *Payne,* this Court, citing a number of cases from other jurisdictions, observed that the admissibility of evidence of flight in a criminal trial "is an almost universal rule." 167 W.Va. at 265, 280 S.E.2d at 79–80. Moreover, recognizing that "the time of the flight does not have to be immediately

after the commission of the crime in order for the evidence to be admissible [,]" we acknowledged that other courts have held that the "failure to appear for trial" is admissible as evidence of flight. 167 W.Va. at 266, 280 S.E.2d at 80. Nevertheless, pursuing a cautious approach with regard to the admission of such evidence, this Court, in *Payne,* awarded the defendant a new trial and held in syllabus point 6:

> In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an *in camera* hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect.[5]

(footnote added). *See also* syl. pt. 5, *State v. Spence,* 182 W.Va. 472, 388 S.E.2d 498 (1989); syl. pt. 11, *State v. Woodall,* 182 W.Va. 15, 385 S.E.2d 253 (1989); syl. pt. 6, *State v. Plumley,* 181 W.Va. 685, 384 S.E.2d 130 (1989); syl. pt. 5, *State v. Deskins,* 181 W.Va. 112, 380 S.E.2d 676 (1989); syl. pt. 2, *State v. Jennings,* 178 W.Va. 365, 359 S.E.2d 593 (1987); syl. pt. 2, *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879 (1982).

Our decision in *Payne* is dispositive. In this case, the circuit court conducted an *in camera* hearing wherein the appellant was permitted to explain his flight or absence from the second day of trial. *See* n. 5, *supra.* Specifically, during that hearing the appellant stated, as he subsequently told the jury, that he had left the trial because of fear and embarrassment over being directed to display his tattoos during the first day of trial. The circuit court concluded that the appellant's explanation was unsatisfactory and granted the State's motion to admit the evidence. Thereafter, the circuit court included State's Instruction No. 15 in the instructions given to the jury. Clearly, the appellant was aware of the charges pending against him at the time he fled, and that knowledge is a factor to be considered in determining whether to submit evidence of flight to the jury. This Court is of the opinion that the circuit court meticulously followed the holding and reasoning of *Payne,* and its decision to admit the evidence of the appellant's flight was "protected by the parameters of sound discretion [.]" *Parker v. Knowlton Construction Company,* 158 W.Va. 314, 329, 210 S.E.2d 918, 927 (1975).[6]

Accordingly, for the reasons stated above, this Court finds no error with regard to the denial of the appellant's post-trial motion, and the final order of the Circuit Court of Cabell County, entered on November 9, 1994, is affirmed.

Affirmed.

---

5. As the opinion in *Payne* states:

> In considering whether the facts and circumstances of the case indicate a guilty conscience or knowledge, the trial judge should consider whether the defendant was aware of the charges pending against him at the time he fled; was aware that he was a suspect at the time he fled; or fled the scene of a crime under circumstances that would indicate a guilty conscience or knowledge; or otherwise fled under circumstances such that would indicate a desire to escape or avoid prosecution due to a guilty conscience or knowledge.... At such [*in camera*] hearing the defendant should be afforded an opportunity to explain his flight or absence from the jurisdiction. If the trial judge finds the defendant's explanation of his conduct to be reasonable, or that the state has not shown that, under the facts and circumstances of the case, the defendant's conduct reflects a guilty conscience or knowledge, then the evidence of flight should not be admitted as evidence of the defendant's guilty conscience or knowledge.

167 W.Va. at 267, 280 S.E.2d at 81.

6. At the beginning of the *in camera* hearing conducted in this case, the circuit court stated: "I consider this hearing at this moment to be a hearing under *State v. Payne, in camera,* in order to determine whether the probative value of the evidence sought to be introduced in the form of the fact that the defendant didn't appear for trial on Friday outweighs its possible prejudicial effect."