THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL A. HAYES, Defendant-Appellant.

Fourth District No. 4—02—0981

Opinion filed November 12, 2004.

STEIGMANN, J., specially concurring.

Daniel D. Yuhas and Susan M. Wilham, both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Jason P. Young, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

In July 2002, Michael A. Hayes was found guilty of residential burglary (720 ILCS 5/19—3 (West 2000)) and theft of property having a value exceeding $300 (720 ILCS 5/16—1(a)(4) (West 2000)). In August 2002, the trial court sentenced defendant to concurrent terms of 15 years in prison for residential burglary and 3 years in prison for

theft of property having a value exceeding $300 with credit for 133 days served. Defendant appeals, arguing the court erred in (1) forcing him to walk in front of the jury and (2) crediting him only 133 days for his time spent in custody. We affirm as modified and remand with directions.

## I. BACKGROUND

On April 11, 2002, an individual entered Charles and Jennifer Glass's home through an unlocked back door and removed jewelry, including a gold and diamond tennis bracelet, five gold rings, and other miscellaneous items. The tennis bracelet and rings were later found at a local pawnshop. Jennifer Glass identified the bracelet and rings as the jewelry taken from her home. Kathy Wynn, an employee of the pawnshop, informed the police that defendant pawned the jewelry on April 11, 2002. The pawnshop also produced a receipt for the jewelry signed by defendant.

One of the Glasses' neighbors, Monique Killion, told the police she saw an African-American man with an average build in his late 20s to early 30s knocking on the front door of the Glasses' home on April 11. Killion told the police the man walked with a limp.

The police arrested defendant for residential burglary on April 16, 2002. In addition, the State later charged defendant with theft of property having a value exceeding $300. Defendant was tried in July 2002. At the trial, the State presented the following witnesses: Charles Glass, Jennifer Glass, Monique Killion, Kathy Wynn, Officer Matthew Quinley, Investigator Bryan Seraphin, Tammy Prince, and Raulon Robinson. Killion and Wynn testified as set forth above.

Prince testified she was Jennifer Glass's sister. According to her testimony, she lived with the Glasses before moving to Tennessee in March 2002. Prince testified she started having a sexual relationship with defendant in late February 2002. During their relationship, defendant came to the Glass residence. Prince testified she had not been back to Urbana since moving to Tennessee.

Robinson testified he talked to defendant while they were in the county jail. According to Robinson's testimony, defendant admitted his guilt to Robinson. Robinson testified defendant told him he entered the Glass residence through the back door. Robinson also testified defendant informed him an African-American woman saw him before he entered the home.

After the State presented its last witness, the trial court ordered defendant to walk a short distance in front of the jury at the State's request. The court allowed this demonstration over defendant's objection. The defense then rested without putting on any evidence.

The jury found defendant guilty of both residential burglary and theft of property exceeding $300. The trial court treated defendant as a Class X offender pursuant to section 5—5—3(c)(8) of the Unified Code of Corrections (730 ILCS 5/5—5—3(c)(8) (West 2000)). The court sentenced defendant to concurrent terms in prison of 15 years for residential burglary and 3 years for theft of property having a value exceeding $300. The court also granted defendant credit for 133 days spent in custody. This appeal followed.

## II. ANALYSIS

On appeal, defendant argues the trial court erred in (1) forcing him to walk in front of the jury and (2) crediting him for 133 days spent in custody instead of 134 days.

The State argues the trial court did not abuse its discretion by ordering defendant to walk before the jury. However, the State concedes the court should have credited defendant for 134 days. This leaves us to determine if the court erred in forcing defendant to walk in front of the jury.

### A. Standard of Review

■ Trial courts have a wide degree of discretion in determining the admissibility of courtroom demonstrations. *People v. Summers*, 202 Ill. App. 3d 1, 19, 559 N.E.2d 1133, 1144 (1990). Absent an abuse of the court's discretion, the court's ruling whether to allow a demonstration will be allowed to stand. *Summers*, 202 Ill. App. 3d at 19, 559 N.E.2d at 1144.

### B. Walking Demonstration

Defendant argues the trial court should not have allowed the walking demonstration because the demonstration's relevance "rests on an unproven assumption." Defendant points to the fact the State did not introduce any evidence defendant walked with a limp on the date of the burglary. According to defendant, "[w]ithout a proper foundation to establish that defendant had a limp around the time of this offense, a demonstration that only proved he had a limp at the time of the trial was irrelevant and should have been excluded."

Defendant relies on *People v. Newbury*, 53 Ill. 2d 228, 290 N.E.2d 592 (1972), to support his argument. In *Newbury*, the defendant was accused of murdering his fiancée. During the trial, the trial court allowed the State to introduce a torn photograph of the defendant found in a dresser drawer in the victim's apartment after her murder. The defendant objected to the admission of the photograph because there was no proof who tore the photograph or when it was torn. On appeal, in support of the court's ruling, the State argued:

" 'The torn photo found in the victim's apartment raises the inference and is consistent with the prosecution's theory and, thus, tends to substantiate the fact that there was a disagreement between the defendant and the victim. *** The inference is that it belonged to the victim and that she tore it, and any question with respect thereto was properly for the jury to consider.' " *Newbury*, 53 Ill. 2d at 239, 290 N.E.2d at 598.

On review, the Supreme Court of Illinois held the photograph should not have been admitted into evidence because the relevance of the photograph "depended upon unproved assumptions—that it was torn recently and that it was torn deliberately and by the deceased." *Newbury*, 53 Ill. 2d at 240, 290 N.E.2d at 599.

This case is distinguishable from *Newbury*. In this case, the relevance of defendant's gait did not depend on an unproved assumption. Unlike in *Newbury* where no one testified who tore the picture or when it was torn, Killion here testified the individual she observed outside of the Glass residence on the day in question walked with a limp. "Relevant evidence is evidence which makes the existence of any fact that is important to the outcome of the case more probable than it would be without the admission of the evidence." *People v. Speirs*, 231 Ill. App. 3d 807, 811, 596 N.E.2d 1257, 1260 (1992). As a result, whether defendant walked with a limp was relevant because of Killion's testimony.

In addition, before the trial court determined it would allow the demonstration in this case, the court heard arguments from defendant's attorney as to why the demonstration should not be allowed:

"THE COURT: Mr. Rumley, let me ask you about the identification question.

MR. RUMLEY: Yes, sir.

THE COURT: Is it your position that the description by Ms. Killian of the individual pounding on the Glass front door is sufficient in connection with the unexplained possession of recently stolen property to get the State past a directed verdict? Was that description of the perpetrator sufficient enough to get past directed verdict?

MR. RUMLEY: It's a very sly question, Judge.

Well—

THE COURT: Cause I'm wondering if your argument would then change if I do not allow him to walk.

MR. RUMLEY: Well, I guess you're saying that my argument is their identification was plenty good enough, it doesn't need anymore help, and then I might be talking out the other side of my mouth if I say, well, you know, you can't hook him up to the crime. And I guess my answer is, well, they're both correct.

I think there's enough in their description that some jurors would infer or at least decide that it probably was [defendant] on the doorstep.

And I am prepared to deal with that in argument.

On the other hand, the identification[,] let's look at the particulars. 5'7" to 5'8", of average build. Well, this gentleman is heavily muscled. [Defendant.] It appears to me. I wouldn't describe him as average.

I don't think he is 5'7". As he stands next to me, he's a good deal shorter than I am, and I'm 6'1".

So—But none of that's in front of the jury. They don't know how tall I am.

I had asked the witness—asked—I asked the jury—Excuse me. I asked the witness how tall I was, and she said 5'7". I'm hoping, and I'm not gonna tell the jury 'cause I'm not testifying, but I'm hoping the jury will understand that her perceptions are questionable.

No, Your Honor, her identification is not sufficient to tie [defendant] to the crime; although, I think some jurors could think it is."

After this exchange, the court ruled it would allow the demonstration because the issue of whether defendant limps was relevant and probative. Although the court does not say so and defendant's attorney previously stated identification was not at issue, from this exchange it appears one of defendant's trial strategies was to call into question whether the man Killion saw on the day in question was defendant.

In *People v. Warmack*, 83 Ill. 2d 112, 126, 413 N.E.2d 1254, 1260-61 (1980), the defendant argued the trial court erred in forcing him to model clothing before the jury. The defendant argued the "fit of the clothing was not at issue, that the demonstration was not relevant to any other issue in the case, and that the demonstration would only serve to show that [the] defendant was one of many people whom the clothes would fit." *Warmack*, 83 Ill. 2d at 126, 413 N.E.2d at 1261. However, one of the defense witnesses at the trial testified the clothing belonged to someone else and would not fit the defendant. *Warmack*, 83 Ill. 2d at 126, 413 N.E.2d at 1261. This testimony brought the fit of the clothing into issue. *Warmack*, 83 Ill. 2d at 126, 413 N.E.2d at 1261. In explaining why the demonstration in *Warmack* was relevant, the supreme court stated:

"A demonstration that the clothing fit [the] defendant, though not of itself establishing that [the] defendant wore that clothing at the time and scene of the crimes, would be entitled to some weight, to be considered by the jury in conjunction with other corroborative evidence from which the guilt or innocence of [the] defendant could be determined." *Warmack*, 83 Ill. 2d at 126, 413 N.E.2d at 1261.

■ The same is true in the instant case. A demonstration showing defendant limps would not establish he was the man Killian saw at the Glass residence on the day in question. However, the demonstration was relevant for the jury to weigh with the other information it saw and heard during the trial to determine if it believed defendant was the man Killion saw at the Glass residence on the day in question and if it believed defendant was guilty. As a result, we find the trial court did not abuse its discretion in allowing this demonstration.

Further, even if the trial court had abused its discretion in allowing the demonstration in this case, the error would have been harmless. Even without the demonstration, the State presented overwhelming evidence of defendant's guilt.

## III. CONCLUSION

■ For the reasons stated, we affirm defendant's conviction but remand the case so the trial court can amend its written judgment to give defendant credit for 134 days, not 133 days, spent in custody.

Affirmed as modified and cause remanded with directions.

TURNER, J., concurs.

JUSTICE STEIGMANN, specially concurring:

Although I fully agree with the majority's opinion, I write specially to commend the trial court for thoroughly exploring defense counsel's objection to the in-court demonstration of defendant's limp before ruling on the issue.

Several good reasons support engaging in the type of discussion the trial court undertook in this case, including the following: (1) the court is likely to become better informed regarding (a) precisely what is being offered, (b) why the party offering the evidence thinks it is appropriate, and (c) why the opponent thinks it is not; (2) if the State is offering the evidence, the defendant's objection thereto is overruled, and the defendant is ultimately convicted, the defendant may challenge the court's ruling on appeal only on the basis of the grounds asserted to the trial court (see *Snelson v. Kamm*, 204 Ill. 2d 1, 32-33, 787 N.E.2d 796, 813-14 (2003); *People v. Williams*, 193 Ill. 2d 306, 347, 739 N.E.2d 455, 477 (2000); *Ficken v. Alton & Southern Ry. Co.*, 291 Ill. App. 3d 635, 644-45, 685 N.E.2d 1, 8 (1996)); and (3) on appeal, as in this case, the reviewing court will have a much better record to consider when addressing the argument that the trial court erred in its evidentiary ruling.

I commend the trial court for its extensive discussion with defense counsel regarding the proffered evidence before making the court's ruling, and I urge other trial courts to do the same.