**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**STATE OF WEST VIRGINIA,**
**Respondent**

**vs.) No. 15-0538 (Monongalia County No. 14-F-314)**

**ROBERT HERNANDEZ, JR.,**
**Petitioner**

**FILED**

**October 26, 2016**

**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

This is a criminal appeal by the Petitioner, Robert Hernandez, Jr., through counsel, Sherman L. Lambert, Sr., from an April 1, 2015, order of the Circuit Court of Monongalia County that sentenced him to prison for life without the possibility of mercy upon his conviction of first degree murder.[1] The State, by counsel Shannon Frederick Kiser, filed a response. In this appeal, the Petitioner argues that (1) the evidence was insufficient for the jury to convict him, (2) the evidence did not establish premeditation and deliberation, and (3) that his due process rights were violated.

This Court has considered the parties' briefs, oral arguments, and the record on appeal. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

During the late evening hours of August 13, 2014, Devante Waites ("Mr. Waites"), the victim, went to a nightclub in Morgantown, West Virginia, called Bent Willey's.[2] Mr.

---

[1]For appeal purposes, the Petitioner was resentenced by an order entered May 15, 2015.

[2]At that time, Mr. Waites was a freshman at West Virginia University.

1

Waites was accompanied by his older brother[3] and two friends.[4]  Shortly after Mr. Waites arrived at the club, an argument started between two young men, Tim Dixon ("Mr. Dixon") and Tashaon Jones ("Mr. Jones").  Mr. Waites apparently knew Mr. Dixon and attempted to act as a peacemaker and diffuse the argument.  However, Mr. Jones began yelling at him.  Mr. Waites' brother intervened and was struck by Mr. Jones.  A fight broke out with several people throwing punches.  The fight was captured by a video camera in the nightclub.  The videotape of the fight shows Mr. Waites and Mr. Jones fighting.  After the fight was broken up, Mr. Waites collapsed on the floor out of view of the video camera.  During the fight Mr. Waites sustained a stab wound near his heart.  He died shortly after being rushed to Ruby Memorial Hospital.

The police initially arrested and charged Mr. Jones with having stabbed Mr. Waites.  However, based upon further investigation that included statements from witnesses and a review of the videotape in the club,[5] the police arrested the Petitioner.  On September 5, 2014, a grand jury indicted the Petitioner under a one count indictment for murder in the first degree. A bifurcated jury trial began in January of 2015.[6]  The State called twenty-one witnesses during the guilt phase.  The Petitioner did not call any witnesses and elected not to testify.  At the conclusion of the guilt phase, the jury returned a verdict convicting the Petitioner of first degree murder.  The jury was thereafter convened for the mercy phase of the case.  The State called two witnesses for the second phase of the trial.  The Petitioner neither testified nor called any witnesses during the mercy phase.  The jury returned a verdict recommending the Petitioner be denied mercy.  The Petitioner was then sentenced to imprisonment for life without the possibility of parole.  This appeal followed.

In this appeal, the Petitioner contends that the evidence was insufficient for the jury to find him guilty beyond a reasonable doubt.  This Court engages in the following analysis when reviewing sufficiency of the evidence claims:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable

---

[3]Jeremy Waites.

[4]Jovaun Howard and Tre Hines.

[5]The police also obtained videotapes from two businesses near the club.

[6]It appears that the State requested the case be bifurcated.

person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). As discussed herein, the record in this case leads us to conclude there was sufficient evidence to support the conviction.

The State called Jared Ford ("Mr. Ford") as a witness. Mr. Ford was at the nightclub when the fight started. He testified that, as he was leaving the club, he saw the person the police arrested immediately after the fight, Tashaon Jones. Mr. Ford informed the police that he saw someone making a stabbing gesture at the victim, and it was not the person that they arrested. This assertion was repeated by Mr. Ford later that evening when he went to the police station to give a formal statement. Mr. Ford testified that, about a month later, he was brought to the police station to view the videotape of the fight. After reviewing the videotape, Mr. Ford realized that the person he saw making a stabbing gesture, identified as the Petitioner, was actually attempting to stab someone that was later identified as Tre Hines.

Detective D. Trejo ("Detective Trejo") testified regarding information the police obtained from the videotape of the fight and a videotape of people entering and leaving the nightclub. Detective Trejo testified that the police were able to identify the Petitioner as he entered the nightclub because of a distinctive tattoo on his right forearm. The State introduced, through Detective Trejo, a still photograph taken from the surveillance video at the nightclub which showed the tattoo on the Petitioner's right forearm. At the request of the State, the Petitioner displayed the tattoo on his right forearm to the jury.[7] Detective Trejo testified regarding photographs that were introduced which showed the Petitioner wearing a white shirt when he entered the nightclub. However, after the fight ended, the Petitioner left the nightclub and returned wearing a dark shirt. Detective Trejo testified that this evidence corroborated information he received from a witness named Asya Drake ("Ms.

---

[7]*See* Syl. pt. 2, *State v. Meade*, 196 W. Va. 551, 474 S.E.2d 481 (1996) ("Ordinarily, it is not an abuse of discretion for a trial court in a criminal case to direct the accused to reveal or display the accused's tattoos to a witness and to the jury at trial, where the accused's tattoos are relevant to the question of the identification of the perpetrator of the offense and where the trial court has weighed the probative value of such evidence against the danger of unfair prejudice, *etc*., pursuant to Rules 401, 402 and 403 of the *West Virginia Rules of Evidence*.").

3

Drake"). Ms. Drake informed Detective Trejo "that she seen the [Petitioner] come from the bar, walk to the vehicle and change shirts."[8]

The State played the videotape of the fight while Detective Trejo was on the witness stand. Detective Trejo identified several people on the videotape, including the Petitioner. In one scene on the videotape, Detective Trejo identified the Petitioner as the person making a stabbing gesture at Tre Hines. Detective Trejo described the precise point on the videotape when the victim was stabbed by the Petitioner as follows:

Q. Now, I want to do that one more time. The fight begins. Now I want to direct your attention to the actions of the defendant at this time.

A. Okay.

Q. Can you, again, point out when the stabbing injury has occurred?

A. I believe it is there.

Q. Now, where is the defendant in this one?

A. He is right there.

Q. Now, can you see the defendant's right arm?

A. Yes, I can.

Q. And what does that appear having happened?

A. It appears as though he's putting something in his right pocket.

. . . .

Q. And, in fact, after Devante [Waites] is stabbed and bleeding, Tashoan

---

[8]Ms. Drake also testified at trial. She confirmed that she saw the Petitioner go to a car and take off a white shirt, that had blood on it, and put on a dark shirt. Further, the State called Kristen Thompson ("Ms. Thompson") to testify on the issue of change in shirts. Ms. Thompson dated the Petitioner. She testified the Petitioner had on a white shirt when she saw him earlier in the evening, but had on a black shirt when she saw him later the same evening.

[Jones] hits him?

A. Correct.

. . . .

Q. Did anyone indicate that Tashaon had anything in his hand?

A. No, they did not.

Q. Could you see anything in his hand?

A. No, we could not.

Detective D. Crouse testified that, when he reviewed the videotape of the fight, he identified the Petitioner as the person appearing to stab the victim. There was testimony from Meredith Chambers, a DNA analyst, that blood found on the Petitioner's jeans was consistent with the DNA of the victim. During the trial, the State asked the Petitioner to show a tattoo on his right arm to the jury. There also was testimony that the Petitioner made an unsolicited statement at the police station, wherein he stated that he would "be spending the rest of his life in jail for some dumb-assed shit." In view of all the evidence presented to the jury, we are convinced that this evidence was sufficient for the jury to find the Petitioner guilty of first degree murder beyond a reasonable doubt.

The Petitioner also has argued that the evidence was insufficient to establish premeditation and deliberation. This issue was not adequately developed in the Petitioner's brief, and, in fact, the State did not address the issue in its brief. However, we will exercise our discretion to resolve this issue even though it was not sufficiently briefed.[9]

---

[9]The Petitioner presented a third assignment of error that also was not properly developed. The Petitioner contended that his due process rights were violated by the denial of his motion for judgment of acquittal or new trial. This assignment of error merely restated the argument of insufficiency of the evidence without any specific development of the due process issue. Because of the brevity of the legal analysis of this issue, the State also did not respond to the issue in its brief. We likewise decline to address this inadequately briefed issue. *See State v. Lambert*, 236 W. Va. 80, 97 n.31, 777 S.E.2d 649, 666 n.31 (2015) ("We summarily reject this dubious and inadequately briefed issue."); *State v. Grimes*, 226 W. Va. 411, 422 n.5, 701 S.E.2d 449, 460 n.5 (2009) ("Inasmuch as those matters were set forth in the appellant's brief in a cursory or tangential manner, they are not cognizable in this

In addressing the issue of premeditation and deliberation, we succinctly have made the following observations:

> Although premeditation and deliberation are not measured by any particular period of time, there must be some period between the formation of the intent to kill and the actual killing, which indicates the killing is by prior calculation and design. This means there must be an opportunity for some reflection on the intention to kill after it is formed.

Syl. pt. 5, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Under our "law, the terms 'deliberate' and 'premeditate' are synonymous." *State v. Miller*, 197 W. Va. 588, 600, 476 S.E.2d 535, 547 (1996). We also have recognized that, "[a]s a practical matter, premeditation generally can be proved only by circumstantial evidence." *State v. LaRock*, 196 W. Va. 294, 305, 470 S.E.2d 613, 624 (1996). This Court explained in *LaRock*:

> If premeditation is found, it must ordinarily be inferred from the objective facts. Accordingly, if one voluntarily does an act, the direct and natural tendency of which is to destroy another's life, it fairly may be inferred, in the absence of evidence to the contrary, that the destruction of that other's life was intended.

*LaRock*, 196 W. Va. at 305, 470 S.E.2d at 624.

The videotape of the fight in the nightclub demonstrates that there was sufficient evidence from which the jury could find, beyond a reasonable doubt, that the victim's murder was carried out by the Petitioner with premeditation and deliberation. This Court has reviewed the videotape of the fight that was shown to the jury. The videotape shows the person identified as the Petitioner make a stabbing gesture at the back of another person identified as Tre Hines. After this failed attempt at stabbing Mr. Hines ("Mr. Hines"), the Petitioner moves over to the victim and grabs the left sleeve of the victim's white shirt with his left hand. The victim tries several times to push away the Petitioner's hand, but the Petitioner persists and struggles to pull the victim with his left hand until the victim is close to him. This conduct of stalking the victim, grabbing the victim's shirt sleeve, and resisting efforts of the victim to be free of his grip presents sufficient evidence for the jury to find deliberation and premeditation by the Petitioner. Although the videotape does not show the Petitioner actually stabbing the victim, because several people are blocking the view, two

appeal." (citation omitted)).

things emerged which a jury could reasonably infer presented evidence that the Petitioner stabbed the victim when he pulled the victim close to him. First, the Petitioner is seen quickly backing away from the victim and placing something in the right front pocket of his pants. The jury could reasonably infer that the Petitioner placed a knife or sharp instrument in his pocket.[10] Second, after the Petitioner backed away from the victim, the victim's white shirt for the first time revealed a dark blemish around the area where he was stabbed. This dark blemish could reasonably be inferred to be blood.[11] In view of the evidence from the videotape, we conclude that there was sufficient evidence from which a jury could find the elements of premeditation and deliberation beyond a reasonable doubt.

For the foregoing reasons, the circuit court's April 1, 2015, sentencing order is hereby affirmed.

Affirmed.

ISSUED: October 26, 2016

CONCURRED IN BY:
Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

---

[10]The police did not recover the murder weapon. However, over a month after the stabbing occurred, a knife was found outside the nightclub and turned over to the police. The knife was tested and found not to contain any DNA. The police concluded that the knife was not the weapon used to kill the victim.

[11]The videotape was not in color.

7