## 44629. HENDERSON v. THE STATE.
(360 SE2d 263)

HUNT, Justice.

Maurice "Zero" Henderson was convicted of arson and of the murder and rape of Margaret Eaton.[1] The defendant was sentenced to consecutive terms of life imprisonment for the offenses of murder and rape, and to a consecutive term of twenty years for the crime of arson. His conviction was reversed in *Henderson v. State,* 255 Ga. 687 (341 SE2d 439) (1986), and, following a retrial, he was convicted of the same crimes and received the same sentence. The defendant appeals, enumerating a number of errors including the playing of a tape of his testimony in the first trial, the admission into evidence of cer-

---

[1] The crimes were committed on December 26, 1984. The defendant was indicted on March 3, 1985. The verdict was returned on June 6, 1985. Defendant's motion for new trial was denied on November 15, 1985, and the defendant's first appeal was docketed in this court on December 23, 1985. This court reversed defendant's conviction on April 9, 1986, and the indictment was tried again before a jury beginning August 26, 1986. The verdict was returned on September 2, 1986. Defendant's motion for new trial, filed September 29, 1986, was denied on February 27, 1987. The case was docketed in this court on May 1, 1987 and orally argued on June 29, 1987.

tain of his statements, and the trial court's failure to sustain several challenges regarding the jury. We affirm.

The victim was the Administration Services Supervisor at the Regional Youth Development Center (RYDC) in Dalton, Georgia. Three months prior to the murder, the defendant had been hired as a houseparent. The defendant reported to work at the RYDC just before midnight on December 25, 1984, to fill in for another employee, Bobby Hinton, as the male houseparent during the midnight to 8:00 a.m. shift. The victim was substituting during the same shift for a sick houseparent. At approximately 5:30 a.m. on December 26, the defendant called the Dalton Fire Department to report a car on fire across the street from the RYDC. The victim's body, burned beyond recognition, was discovered in the back seat of her car. The cause of death was determined to be asphyxiation due to smoke inhalation and burns. The state's medical evidence revealed that she had received a laceration from a blow to the back of her head, that she had two broken ribs, and had been raped. Dalton Fire Department officials testified that their examination of the car revealed that the fire was not accidental and that an accelerant had been poured on the body and the car. At the scene of the crime, the defendant told police officers that everything at work had been normal until the victim received a phone call at approximately 4:00 a.m. which she noted in the control log. Shortly thereafter, she told the defendant she would have to leave for a few minutes. The defendant stated that he continued his rounds until 5:30 a.m. when he saw the fire outside.

The state introduced evidence that the victim's handwriting in the RYDC log book noting that she had received a call at 4:00 a.m. possibly indicated stress, duress, or torture.

The defendant was arrested for the victim's murder on December 26, 1984. On February 25, 1985 the defendant made a statement to police accusing Bobby Hinton, the houseparent at the RYDC who had worked the shift just prior to the defendant on the night of the murder, of raping and killing the victim. The defendant stated that Hinton had killed the victim because she had observed Hinton in possession of cocaine at the RYDC and had told him she was going to report him to RYDC authorities.

At trial, over the defendant's objection, the state played the defendant's taped testimony from the first trial. At the earlier trial, the defendant testified that Hinton had murdered the victim, although the defendant's trial testimony differed markedly from his statement of February 25, 1985. See *Henderson v. State*, supra at 688. At the first trial, the defendant admitted that his earlier statements to the police were substantially false. The defendant did not testify during the second trial. Hinton denied committing the crimes and testified that he had been with his girl friend during the time of the murder.

His girl friend corroborated this testimony.

1. The defendant argues that the admission of the tape of his testimony from the first trial was error because it was the product of the trial court's erroneous exclusion of evidence pertaining to Hinton's cocaine involvement and police training. In support of this argument, the defendant relies on *Harrison v. United States*, 392 U. S. 219 (88 SC 2008, 20 LE2d 1047) (1968), and other cases which involve a defendant who is forced by the erroneous admission of illegal evidence to take the witness stand to offer an explanation of the illegal evidence.

The defendant's sole defense at his second trial, as in his first trial, was that Hinton, rather than the defendant, committed the crimes charged when the victim stated she would report Hinton to the authorities for possessing cocaine on RYDC premises. While it is true that we reversed his previous conviction because of the trial court's erroneous exclusion of the evidence concerning Hinton, we agree with the state that there is no connection between his decision to testify at the first trial, and the trial court's rulings excluding that evidence. The defendant's decision to testify at the first trial was a tactical one, resulting from his strategy to raise his sole defense that Hinton committed the crimes. There is no reason to believe that he would not have testified, had the excluded evidence been admitted. Accordingly, this enumeration is without merit.

2. Contrary to defendant's second enumeration of error, the evidence presented during the *Jackson-Denno* hearing supports the trial court's ruling that defendant's statements made to police officers the day after the murder were voluntary and that the defendant was not in custody at the time he made those statements. *Lobdell v. State*, 256 Ga. 769, 773 (6) (353 SE2d 799) (1987); *Hardeman v. State*, 252 Ga. 286 (1) (313 SE2d 95) (1984).

3. In his fourth enumeration, the defendant raises several challenges regarding the jury. His claim under *Batson v. Kentucky*, ___ U. S. ___ (106 SC 1712, 90 LE2d 69) (1986) fails because assuming, arguendo, that the striking of both black jurors on the panel raised a prima facie showing of discrimination, the record amply supports the trial court's finding that the prosecutor used peremptory challenges to remove those jurors for legitimate, racially-neutral reasons. These reasons include that the two prospective jurors knew key witnesses in the case, and that one of the jurors gave contradictory responses, and one gave no response, to questions concerning their knowledge about the case. *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987). We also disagree with defendant's contention that the trial court improperly refused to excuse a prospective juror who indicated he had formed and expressed an opinion regarding the defendant's guilt or innocence. On subsequent questioning by the trial court and by the prose-

cution, the prospective juror stated that he could set aside his opinion and base his verdict on the evidence, and the trial court's instructions to the jury. *Devier v. State*, 253 Ga. 604, 608 (3) (323 SE2d 150) (1984); *Waters v. State*, 248 Ga. 355, 362 (2) (283 SE2d 238) (1981). We find no merit to defendant's remaining arguments about the jury and prospective jurors in this case.

4. Defendant's remaining enumerations are without merit.

*Judgment affirmed. All the Justices concur, except Bell, J., who concurs in the judgment only.*

DECIDED SEPTEMBER 24, 1987.

*Brown & Milam, Rickie L. Brown,* for appellant.

*Jack O. Partain III, District Attorney, Steven M. Harrison, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.

