432 S.E.2d 86

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Kenneth S. BASS, Defendant Below, Appellant.**

**No. 21497.**

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1993.

Decided June 11, 1993.

418

Darrell V. McGraw, Jr., Atty. Gen., Stephen R. VanCamp, Asst. Atty. Gen., Charleston, for appellee.

Bernard L. Spaulding, Logan, for appellant.

PER CURIAM:

The defendant, Kenneth S. Bass, was convicted of unlawful wounding by jury in the Circuit Court of Logan County by order entered May 15, 1992. The defendant, who is black, appeals his conviction to this Court on the ground that the trial court committed reversible error when it denied his motion for a mistrial. The mistrial was sought based on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), as the defendant claimed that the prosecutor's removal of the only black juror was racially motivated. The defendant also contends that the trial court committed error when it allowed the victim in this case

to exhibit to the jury the scar from his wound. Because we find no error below, the conviction of the defendant is affirmed.

The facts leading to the defendant's conviction are as follows. The defendant and the victim engaged in an altercation at the SuperAmerica gasoline station in Cora, Logan County, on December 8, 1990. Although the facts surrounding the altercation are in dispute, it is undisputed that at some point during the altercation, the victim received a knife wound requiring 187 stitches. The jury was permitted to view the victim's scar from the wound. The defendant was convicted of unlawful wounding and was sentenced to one to five years incarceration.

I.

During jury selection, only one member of the jury panel that was seated, a Mr. Hairston, was a black person. In response to *voir dire* questioning by the court, Mr. Hairston indicated that he recently met the defendant at two political rallies where the defendant sought his vote on his candidacy for county magistrate. He also stated that he had not met the defendant at any other time, and that he told the defendant at those rallies: "I know who you are and I see you. I'll vote for whoever I choose." Mr. Hairston further stated that he was not aware of the charge against the defendant or the underlying facts of this case until the *voir dire*. Mr. Hairston then stated that he could reach a fair and impartial verdict in the case. The State declined to make a motion to strike Mr. Hairston for cause at that time.

Shortly after the foregoing questioning, Mr. Hairston, on his own initiative and still during *voir dire*, informed the trial court that the prosecutor representing the State previously participated in a case where Mr. Hairston's son sought a warrant in magistrate court. Mr. Hairston told the trial court that he was satisfied with the outcome of the case in magistrate court. He reiterated that he felt capable of reaching a fair and impartial verdict in the underlying case. Again, the prosecutor declined to make a motion to strike .Mr. Hairston for cause.

Thereafter, the State used one of its peremptory strikes to remove Mr. Hairston from the jury panel. Counsel for the defendant then moved for a mistrial based upon the State's peremptory strike of Mr. Hairston. The prosecutor offered to the trial court, as justification for the peremptory strike of Mr. Hairston, the following explanation:

"Well, there were several reasons. I believe he attended a political rally at which Mr. Bass was present. Mr. Bass is a candidate for an office here in Logan. Mr. Hairston's wife is an employee of N.E.W. for women. She, within the last few months, notarized an ethics complaint against me which was dismissed and they also, N.E.W. Employment for Woman, are a group which support candidates and very frankly I don't have any evidence that they support Mr. Bass for public office but I believe they are. That is why I struck Mr. Hairston. Mainly I don't think his wife likes me. She took a—notarized a complaint against me and Mr. Bass had a political rally."

The trial court responded that although it did not believe the State had grounds to challenge Mr. Hairston's jury membership for cause, it did believe the State had "legitimate reasons" to use a peremptory strike on Mr. Hairston. The defendant contends that the prosecutor's reasons for striking Mr. Hairston were insufficient and his removal violated the constitutional precepts of equal protection established by the Supreme Court in *Batson:* "The Equal Protection Clause guarantees the defendant that the state will not exclude members of his race from the jury venire on account of race ... or on the false assumption that members of his race as a group are not qualified to serve as jurors." 476 U.S. at 86, 106 S.Ct. at 1717, 90 L.Ed.2d at 80. (Citations omitted).[1]

1. The initial and perhaps preeminent decision in this field is *Strauder v. West Virginia,* 100 U.S. 303, 10 Otto 303, 25 L.Ed. 664 (1880).

There, a statute barring blacks from serving as jurors was found to violate the Equal Protection

We adopted *Batson*'s principles in *State v. Marrs*, 180 W.Va. 693, 379 S.E.2d 497 (1989), where we stated in Syllabus Point 1:

"It is violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. *Constitution* for a member of a cognizable racial group to be tried on criminal charges by a jury from which members of his race have been purposely excluded."

In Syllabus Point 2 of *Marrs*, we adopted *Batson*'s test which is used to determine whether a defendant has proved a *prima facie* case for a violation of the Equal Protection Clause of the Fourteenth Amendment when an allegation is made that the State has been racially discriminatory in its use of its peremptory challenges:

"To establish a prima facie case for a violation of equal protection due to racial discrimination in the use of peremptory jury challenges by the State, 'the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.' [Citations omitted.] *Batson v. Kentucky*, 476 U.S. 79 at 96, 106 S.Ct. 1712 at 1722, 90 L.Ed.2d 69 [at 87–88] (1986)."

In this case, the defendant clearly met the first two prongs of the *prima facie* case test. As a black man, he is a member of a cognizable racial group, and the prosecutor exercised his peremptory challenge to remove the only black person from the venire. The defendant may rely on the undisputed fact that the "peremptory challenge constitutes a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" We believe that the foregoing facts are enough to meet the final prong of the test because they raise an "inference" that the State used its peremptory strike to exclude the black venireman from the petit jury because he was black.

Once a defendant makes the foregoing showing and a *prima facie* case is established, then under *Batson* the State has the burden to establish an adequate explanation for the exclusion:

"Once the defendant makes the requisite showing, the burden shifts to the State to explain adequately the racial exclusion. *Alexander v. Louisiana*, 405 U.S. [625,] 632, 31 L.Ed.2d 536 [542], 92 S.Ct. 1221 [1226 (1972)]. The State cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties. *See Alexander v. Louisiana*, [405 U.S.] at 632, 31 L.Ed.2d 536 [542–43], 92 S.Ct. 1221 [1226]; *Jones v. Georgia*, 389 U.S. 24, 25, 19 L.Ed.2d 25 [27], 88 S.Ct. 4 [5–6] (1967). Rather, the State must demonstrate that 'permissible racially neutral selection criteria and procedures have produced the monochromatic result.' *Alexander v. Louisiana*, [405 U.S.] at 632, 31 L.Ed.2d 536 [542], 92 S.Ct. 1221 [1226]; *see Washington v. Davis*, [426 U.S. 229,] 241, 48 L.Ed.2d 597 [608], 96 S.Ct. 2040 [2048 (1976)]." 476 U.S. at 94, 106 S.Ct. at 1721, 90 L.Ed.2d at 86. (Footnote omitted).

We adopted a similar test as to the State's burden in Syllabus Point 3 of *Marrs*:

"The State may defeat a defendant's prima facie case of a violation of equal protection due to racial discrimination in selection of a jury by providing nonracial, credible reasons for using its peremptory challenges to strike members of the defendant's race from the jury."

The Supreme Court in *Batson* went on in note 20 to state that "the prosecutor must

Clause of the Fourteenth Amendment to the   United States Constitution.

give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88–89, *citing Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207, 218 (1981). In *Batson*, the Supreme Court also remarked: "[W]e emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause." 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. (Citations omitted).

In *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), the Supreme Court addressed a *Batson* issue that arose when the prosecutor indicated he would exercise two of his peremptory challenges against two Hispanic jurors. Because several witnesses only spoke Spanish, an interpreter was authorized to be used. The prosecutor explained that during *voir dire* he had questioned the two jurors as to whether they could accept the interpreter's translation rather than rely on their own. The jurors indicated some reluctance to do so.

The trial court accepted the foregoing explanation and permitted the exercise of the two peremptory challenges. The trial court's ruling was affirmed by the New York Court of Appeals. Subsequently, the United States Supreme Court also affirmed and, although unable to agree on all aspects of the decision, the Court apparently agreed on the following statement:

"In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 [854] (1985), *citing Patton v. Yount*, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 [858] (1984)."

500 U.S. at ——, 111 S.Ct. at 1869, 114 L.Ed.2d at 409.

■ Just during this term of our Court in *State v. Harris*, 189 W.Va. 423, 432 S.E.2d 93 (1993), we dealt with a prosecutor's peremptory challenge of black jurors. We reversed the defendant's conviction because the trial court failed to require the prosecutor to give nondiscretionary justifications for the challenges, and stated in Syllabus Point 2:

"The Fourteenth Amendment's mandate that race discrimination be eliminated from all official acts and proceedings of the State is most compelling in the judicial system. The U.S. Supreme Court has held, for example, that prosecutorial discretion cannot be exercised on the basis of race and that, where racial bias is likely to influence a jury, *an inquiry must be made into such bias*. The prohibition on discrimination in the selection of jurors makes race neutrality in jury selection a visible, and inevitable, measure of the judicial system's own commitment to the commands of the *Constitution*. The courts are under an affirmative duty to enforce the strong statutory and constitutional policies embodied in that prohibition." (Emphasis in original).

■ In this case, although the defendant proved a *prima facie* case of a violation of the Equal Protection Clause, the State offered nonracial reasons for using its peremptory strike on Mr. Hairston, the lone black person on the jury venire. Mr. Hairston attended two political rallies on behalf of the defendant. This fact standing alone may not have been constitutionally sufficient to strike Mr. Hairston in view of Mr. Hairston's statement that he did not promise to vote for the defendant. The more credible reason for the peremptory strike was the fact that Mr. Hairston's wife was an employee of an organization that filed an ethics complaint against the prosecutor, and she notarized the ethics complaint. The prosecutor might reasonably assume that Mr. Hairston was aware of this fact and might have some hostility towards him. The trial court, in reviewing the reasons proffered by the State to exclude Mr. Hairston from the jury venire, found those rea-

sons to be "good reasonable grounds for a legitimate exercise of prosecutorial discretion," and we agree.[2]

We find this case to differ from *Marrs, supra,* where we concluded that the reason offered by the prosecutor for striking the single black juror was not credible. In *Marrs,* the prosecutor claimed the strike was based on her belief that she saw the same last name as the juror's on a bench warrant. She did not claim that the warrant was issued against the juror nor was any attempt made on *voir dire* to inquire about the matter. In contrast, we find the instant case to be similar to others where courts have found a credible reason offered. *See, e.g., United States v. Wilson,* 867 F.2d 486 (8th Cir.), *cert. denied,* 493 U.S. 827, 110 S.Ct. 92, 107 L.Ed.2d 57 (1989) (black venireman struck because he was employed as a social worker within the criminal justice system and because he had professional contact with defense counsel, but not with prosecutors); *United States v. Woods,* 812 F.2d 1483 (4th Cir.1987) (black venireman struck because he may have attended the church where the defendant practiced as an ordained minister and because he may have read inflammatory articles about the case); *Henderson v. State,* 257 Ga. 434, 360 S.E.2d 263 (1987) (black veniremen struck because they either knew key witnesses or gave contradictory or no responses to questioning).

## II.

The defendant contends the trial court erred in allowing the victim to display to the jury the scar from his wound. The defendant argues that the scar from the victim's wound, which required 187 stitches, was akin to a gruesome photograph and its prejudicial impact far outweighed its probative value to the jury.

Rules 402 and 403 of the West Virginia Rules of Evidence govern the admissibility of relevant evidence at trial.[3] In Syllabus Point 4 of *Gable v. Kroger Co.,* 186 W.Va. 62, 410 S.E.2d 701 (1991), we stated:

"Rules 402 and 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

And we stated that a trial court's decision on the admissibility of evidence will not be disturbed absent an abuse of discretion in Syllabus Point 4 of *State v. Farmer,* 185 W.Va. 232, 406 S.E.2d 458 (1991):

" ' "Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk,* [171 W.Va. 639, 643,] 301 S.E.2d 596, 599 (1983).' Syl. pt. 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983)."

*See also Gable v. Kroger Co.,* 186 W.Va. at 65, 410 S.E.2d at 705.

Finally, from a substantive standpoint, we addressed an identical issue in *State v.*

**2.** The Supreme Court in note 21 of *Batson* stated that deference should ordinarily be given to the trial court's findings in regard to an evaluation of nonracial reasons proffered by the State for excluding potential jurors through the use of a peremptory strike: "Since the trial judge's findings in the context under consideration here largely will turn on an evaluation of credibility, a reviewing court ordinarily should give those findings great deference." 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 89, *citing Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985) (" '[A] finding of intentional discrimination [in a Title VII sex discrimination case] is a finding of fact' entitled to appropriate deference by a reviewing court.")

**3.** Rules 402 and 403 of the Rules of Evidence state:

"**Rule 402. Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible.** All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of West Virginia, these rules, or other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible.

"**Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

*Scotchel,* 168 W.Va. 545, 554–55, 285 S.E.2d 384, 390 (1981), where we stated:

"Nor do we find merit in the claim that the victim of the assault should not have been permitted to show the jury the scar he received. The defendant was indicted under our malicious wounding statute, W.Va.Code, 61–2–9, which requires proof of a bodily injury caused 'with intent to maim, disfigure, disable or kill.' We have traditionally held under this statute that evidence of the extent of an injury is admissible since under the statute the State must show that the defendant inflicted the injury with an intent to produce a permanent disability or disfiguration. *State v. Sacco,* [165] W.Va. [91], 267 S.E.2d 193 (1980); *State v. Stalnaker,* 138 W.Va. 30, 76 S.E.2d 906 (1953); *McComas v. Worth,* 113 W.Va. 163, 167 S.E. 96 (1932); *State v. Taylor,* 105 W.Va. 298, 142 S.E. 254 (1928). We do not find any relevant analogy between the display of a scar and the introduction of gruesome photographs. *Cf. State v. Rowe,* 163 W.Va. 593, 259 S.E.2d 26 (1979). In the first place, a scar is not necessarily gruesome in appearance. A scar represents the present actual condition which is relevant to the issue of intent to cause permanent disability or disfigurement, while a gruesome photograph depicts the initial and temporary extent of the wound. In the latter, the shock effect often outweighs the probative value of the evidence."

In this case, the trial court held a hearing on the admissibility of showing the victim's scar to the jury. The trial judge personally viewed the scar and found that the wound was healed and no blood was present. The trial court agreed with the State's argument that exhibition of the scar was admissible because the scar was probative to the permanency of the victim's wound, and the State had to prove that the victim suffered a permanent wound as an element of the crime of unlawful wounding. The trial court found that the probative value of an exhibition of the scar outweighed the prejudicial nature of the wound because the wound had healed and no blood was present. We do not find an abuse of discretion under these facts; thus, the trial court did not err in allowing the victim to exhibit to the jury the scar from the wound.

Because no error was committed by the trial court,[4] the judgment of the Circuit Court of Logan County is affirmed.

Affirmed.

---

**4.** We note that the defendant also contends that the trial court erred when it failed to allow evidence of the victim's reputation as a violent person. However, as defense counsel acknowledges, the record does not show that any such evidence was offered to the trial court, let alone excluded by it. Moreover, that assignment of error was not argued in the defendant's brief on appeal, and we deem it waived. As we stated in Syllabus Point 6 of *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981): "Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived." *See also State v. Church,* 168 W.Va. 408, 410 n. 1, 284 S.E.2d 897, 899 n. 1 (1981).

The defendant also asserts that the record shows that his trial counsel was ineffective when his assistance is compared with that of a reasonably qualified defense attorney. We do not agree that the record as developed in this case shows that defense trial counsel was ineffective. However, we note that in Syllabus Point 11 of *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988), we stated: "Where the record on appeal is inadequate to resolve the merits of a claim of ineffective assistance of counsel, we will decline to reach the claim so as to permit the defendant to develop an adequate record in habeas corpus." *See also State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991); *State v. Wickline,* 184 W.Va. 12, 399 S.E.2d 42 (1990).